UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATE OF AMERICA,   ) | Criminal No. 13-CR-3395-L |
| Plaintiff,   ) | |
|   ) | **ORDER GRANTING** |
|   ) | **DEFENDANT'S MOTION TO** |
| v.   ) | **SUPPRESS STATEMENTS** |
|   ) | |
| VICTOR HAAK,   ) | |
|   ) | |
| Defendant.   ) | |
|   ) | |

Pending before the Court is Victor Haak's, (Defendant), Motion to Suppress Statements. [ECF No. 16.] The Government has filed a Response in Opposition, accompanied by an audio CD and video DVD of the custodial interrogation. [ECF No. 17; 17-1.] On November 18, 2013, the Court held a hearing on the matter.

**FACTUAL BACKGROUND**

Defendant was arrested on September 1st, 2013, at the San Ysidro Port of Entry. He was the sole occupant of a 2001 Ford Expedition which was found to contain packages of methamphetamine concealed in the spare tire of the vehicle.  Department of Homeland Security Investigation Special Agents A. Rios and J. Donaher, interviewed the

Defendant. At that time, Defendant signed a *Miranda*[1] waiver and then made statements to the Agents. The interview was audio and videotaped. On September 12, 2013, a federal grand jury in the Southern District of California returned an Indictment charging Defendant with importation of methamphetamine, in violation of 21 U.S.C. §§ 952, 960. On September 17, 2013, Defendant was arraigned on the indictment.

## MOTION TO SUPPRESS

Defendant claims that he made post-arrest statements denying his knowledge of the drugs in the spare tire, which he contends should be suppressed because during the interview he indicated that he wanted to speak to a lawyer but his request was not honored, and the agents inferred Defendant might be released from custody if he spoke to the agents. (Mot. 3.) According to Defendant, his waiver was not knowing and voluntary because the above conduct 1) violated his *Miranda* rights, and 2) the inference by the agent that he might be released if he spoke to them renders his statements involuntary. (*Id*.)

The Government counters that Defendant's *Miranda* waiver was knowing, intelligent and voluntary based on the totality of the circumstances because the Agents advised Defendant of his rights both orally and in writing before the interview, Defendant agreed to waive his rights and signed a *Miranda* waiver form, he understood his rights despite his youth, Defendant had been arrested as a juvenile making him familiar with his *Miranda* rights, and there was no time lapse between the waiver and the interview. (Oppo 13.)

There is a presumption against waiver, which the Government must prove by a preponderance of the evidence. *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir.1998). "To meet this burden, generally, the Government must prove that, under the totality of the circumstances, the defendant was aware of the nature of the right being

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966) (A person in custody must be informed before interrogation that he has a right to remain silent and to have a lawyer present.)

abandoned and the consequences of such abandonment.  Several factors to consider are (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system." *United States v. Crews,* 502 F.3d 1130, 1140 (9th Cir. 2007)(internal citation omitted).

Under a totality of the circumstances review of the interrogation audio and video, it is not clear that Defendant fully understood his rights, and the consequences of his arrest, despite the signed *Miranda* waiver.  Unlike the defendant in *Crews*, it appears that here, Defendant was at least temporarily diminished in his mental capacity to comprehend that he would not be released, and what a waiver of his rights encompassed.  *See Crews*, 502 F.3d at 1140 (despite no written waiver, defendant knowingly and voluntarily waived his rights because there was "nothing in the record to suggest that defendant was of any diminished mental capacity that prevented him from understanding the nature of his rights or the consequences of abandoning them.")

The following excerpt demonstrates Defendant's apparent inability to understand that he would not be released:

> Agent Rios: I'm gonna have you read the waiver out loud, state your name ... actually state your name and then read the waiver out loud and then print and sign ... if you'd like...
>
> (Agent Rios then handed Defendant the Statement of Rights Form)
>
> Defendant: Okay, it says, I Victor Haak have read, or someone has read to me, the statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present.
>
> Agent Rios: So you understand your rights.
>
> Defendant: Yeah. Yeah, I mean, I ain't never been involved in anything like this.

1  Agent Rios: But you understand your rights though, right?
2  Defendant: Yeah, I got my rights. You guys read 'em.  Yeah, I got you.  And the
3  waiver. I, honestly, I don't know what to do, if like, I've never done
4  this, you know what I mean, so I don't know what, you know, I didn't
5  do anything wrong.
6  Agent Rios: Okay
7  Defendant:  So I don't know what, what is there, is there like something on this
8  thing that if you did something wrong, you go to and I don't want to
9  make a mistake.
10 Agent Rios: Yeah, no, I got that dude, but I mean you understand your rights . . .
11 Defendant: I'll tell you guys, you know, my day, what I did, after that.
12 Agent Rios: Sure
13 Defendant: But I don't know if I do that with an attorney here. . .
14 Agent Rios: And that's a decision that you have to make, I mean, I can't tell you . .
15 Defendant: It takes time. . .
16 Agent Rios: It will take time.
17 Defendant: I just want to you know, give you guys what happened and then after
18 that . . .
19 Agent Rios: Okay . . . So if you want to waive your rights just print your name
20 there then sign and date it on the bottom . . . And your name again . . .
21 full name.
22 Defendant: Victor Haak
23 Agent Rios: Okay
24 Defendant:  Is there like, just a quick question, is there like, if say I do this, is
25 there, I *can still, I'm still able to leave, right?*  Its' not like I contradict
26 anything.
27 Agent Rios: Well, you're . . . I'll tell you this dude, you're under arrest right now.
28

4

1                     That's why you were in a holding cell, that's why you . . .

2   Defendant:  They told me something like that . . .

3   Agent Rios:  Yeah, and that's why I put you in handcuffs when I walked you over
4                     here, that's why we're having this interview, that's why I read you
5                     your rights. You're under arrest for importation of narcotics.

6   Defendant:  That's what they said, something about that but they didn't tell me
7                     nothin'.

8   Agent Rios:  And you know, we'll talk about that.

9   Defendant:  But they didn't even tell me nothin'. I was like bro, I don't even do
10                    drugs.

11   Agent Rios:  Yeah, no, I get it.

12   Defendant:  I was like, what the fuck, all I did was go to some restaurant. . .

13   Agent Rios:  Yeah, so if you want to talk, you would just print your name . ..

14   Defendant:  I'm gonna talk.

15   Agent Rios:  You know, sign . . .

16   Defendant:  *Is there a possibility of me getting out though, I mean*?

17   Agent Rios:  We can discuss that but I mean that'll be, you know, through our
18                     conversation here.

19   Defendant:  'Cause you know I've got a baby girl and I'm not, you know . . .

20   Agent Rios:  Okay

21   Defendant:  (unintelligible)

22   Agent Rios:  Full Name . . . and your legal signature . . . and then right here, date
23                     that, it's September the first, 2013.

24   (Defendant appears to write his name, sign his signature and date the document)

25   Agent Rios: That's it. You're good. You're good. You're good.

26 (Oppo. 6-8.)(Emphasis added).

27        Although Agent Rios read Defendant his rights, and Defendant ultimately signed

28

the waiver of those rights, it is apparent from the above interchange that Defendant was confused.  Despite Agent Rios attempts to clarify that Defendant was not free to go, Defendant continued to ask if he may be released if he continued to speak to the agents. In addition, during the November 11, 2013, hearing held by this Court, Defense counsel noted that Defendant suffers from anxiety disorder, a recognized mental health condition.

The Court looks to the remainder of the *Crews* factors to determine whether the waiver was valid.  Here, after much back and forth, Defendant ultimately signed a written waiver, weighing in favor of a knowing and voluntary waiver. *United States v. Bernard S.*, 795 F.2d 749, 753 n. 4 (9th Cir. 1986) ("although not dispositive, a written *Miranda* waiver is 'strong' evidence that the waiver is valid"); *United States v. Amano*, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where *Miranda* rights were read to defendant twice and defendant signed a written waiver.)  Further, Defendant was advised in his native tongue.  *Crews*, 502 F.3d 1140 (rights read to defendant in English, his native language, which factored in favor of waiver being knowing and voluntary).  Weighing against the waiver's voluntariness is the fact that Defendant did not appear to fully understand his rights, despite his acknowledgment of those rights, as is evidenced by the transcript of the interview.  Although Agent Rios dutifully explained Defendant's rights to him,  it appears his attempts at clarifying the rights were not successful.  Finally, the Government maintains that Defendant was familiar with his *Miranda* rights because he has a juvenile record with many arrests.  *United States v. Williams*, 291 F.3d 1180, 1190 (9th Cir. 2002)(waiver valid in part because defendant was familiar with the criminal justice system from past encounters).

Agent Rios followed the letter and spirit of the *Miranda* warnings in reading Defendant his rights, and attempting to confirm that Defendant understood his rights before waiving them, however, Defendant remained confused.  Although Defendant signed the waiver, the Court cannot with certainty determine that he fully understood the

consequences of that waiver. The Government produced Defendant's juvenile arrest record during the November 11, 2013 hearing in support of the argument that Defendant could not claim ignorance of his *Miranda* rights. The Court has reviewed Defendant's rap sheet and notes that Defendant had seven law enforcement contacts as a juvenile, weighing in favor of a knowing and voluntary waiver of his *Miranda* rights. However, the Court is required to consider the totality of the circumstances, and in the present case, Defendant's apparent inability to comprehend that he was not going to be released, evidenced by his repeated questions to the Agents even after the attempt to clarify the matter to Defendant, weighs against the waiver being knowing and voluntary.

With regard to Defendant's purported request for an attorney, his singular mention that he would speak to the Agents, "[b]ut I don't know if I do that with an attorney here" does not constitute an unambiguous request for counsel. *See Davis v. United States*, 512 U.S. 452, 458-59 (1994); *see also United States v. Washington*, 462 F.3d 1124, 1134 (9th Cir. 2006.) A suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to meet the requisite level of clarity." *Davis*, 512 U.S. at 459. Although the "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney,' . . . a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel" does not require that the interview cease. *Davis* 512 U.S. 459, citing *McNeil v. Wisconsin*, 501 U.S., at 178 (1991). Statements such as "maybe I should talk to a lawyer," *Davis*, 512 U.S. at 462, or "I think I would like to talk to a lawyer," *United States v. Younger*, 398 F.3d 1179, 1187–88 (9th Cir.2005), have been held ambiguous and not requests for counsel. In contrast, the questions "[c]an I get an attorney right now?;" "[y]ou can have an attorney right now?;" and "[w]ell, like right now you got one?" taken together, did constitute an unambiguous request for an attorney.

1  *Younger*, 398 F.3d at1187 (citing *Alvarez v. Gomez,* 185 F.3d 995, 998 (9th Cir.1999).

    Similarly, Defendant's contention that Agent Rios induced him into talking by inferring that Defendant might be released if he spoke to the agents does not rise to the level of coercion sufficient to make Defendant's statements involuntary.  The Supreme Court has held when considering the waiver of *Miranda* rights, that "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).   Generally, a confession is considered involuntary if it was produced through coercive police activity," which is defined as "physical intimidation or psychological pressure." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011)(citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  Deception does not render a confession involuntary.  *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).   In determining whether a confession is voluntary, the Court must consider the "totality of the circumstances involved and their effect upon the will of the defendant." *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).  Factors to consider are "the degree of police coercion; the length, location and continuity of interrogation; and the defendant's maturity, education, physical condition, mental health, and age." *Brown*, 644 F.3d at 979.

    Here, Defendant asked Agent Rios a second time whether there was a possibility he might be released prior to signing the waiver, to which Agent Rios responded: "[w]e can discuss that but I mean that'll be, you know, through our conversation here."  (Oppo. 8.)  Defendant signed the waiver immediately after this exchange.  The agent did not exert physical intimidation over Defendant, nor psychological pressure in the form of threats or promises.  At worst, Agent Rios misled Defendant into believing he might be allowed to go if he spoke to the agents.  Counterbalancing the effect of this statement on Defendant were Agent Rios' repeated explanations that Defendant was under arrest for a felony.  Considering the circumstances of the interview, this lone statement did not rise to the level of coercion or deception necessary to render Defendant's subsequent statements

involuntary.

## **CONCLUSION AND ORDER**

In light of the above, the Court finds that Defendant's request for an attorney was not sufficient to invoke his right to an attorney under *Miranda* and he was not coerced into speaking with the agents. However, observing Defendant's demeanor during the interview and his apparent confusion, the Court concludes that Defendant's *Miranda* waiver was not knowing and intelligent under the *Crews* factors. Accordingly, the Court **GRANTS** Defendant's Motion to Suppress Statements.

**IT IS SO ORDERED.**

DATED: December 4, 2013

_____
M. James Lorenz
United States District Court Judge